JUSTICE GRAY,
dissenting.
¶127 I respectfully dissent from the Court’s scholarly and sweeping decision which abrogates decades of precedent and fails to take into account that the Legislature, like the livestock owners of Montana, have long relied on that precedent. While I do agree with some of the Court’s discussion, my disagreements are extensive. Rather than have the opinions in this case fill an entire volume of Montana Reports, however, I will address only major points.
¶128 Regarding points of agreement between myself and the Court, I agree with the Court’s early conclusions that the law of the open range remains the law of this state and that the term open range in- *135 eludes all highways outside of private enclosures and used by the public, unless modified by the Legislature. I also agree we correctly held in Williams that the herd district statutes were intended only to protect landowners and owners of livestock. Finally, I agree that, while the portions of Indendi analyzing and resolving the questions at issue pursuant §§ 60-7-201 and 60-7-202, MCA, were correct, the negligence per se discussion and holding therein must be overruled because the legal fence statutes were enacted to exclude, not confine, livestock.
¶ 129 I disagree with and, therefore, dissent from most of the rest of the Court’s opinion, with regard to its approach, its discussion and its result. In particular, I strenuously disagree with the Court’s statement in the early part of its Discussion that “[t]his case involves a general misconception of the import of Montana’s ‘open range doctrine’ in matters involving the legal relationship between the owners of livestock and users of motor vehicles on Montana highways.” Under decades of Montana law, there is no “misconception,” since that law has clearly held for decades that-absent an exception enacted by the Legislature-an owner of livestock has no duty to prevent the livestock from wandering onto Montana highways. See, e.g., Bartsch, 149 Mont. at 409, 427 P.2d at 305; Williams, 235 Mont. at 141, 766 P.2d at 249. For the same reason, I cannot agree with the Court’s statement soon thereafter that the District Court’s expression of the “prevailing law” in Montana with regard to open range is “incorrect.” The prevailing law was-at the time of the District Court’s decision-and has been for decades as stated by that court. That this Court changes, in this case, the prevailing law by overruling decades of well-settled precedent does not support the Court’s statement that the District Court erred under “prevailing law.”
¶130 I also disagree with the Court’s statement that open range and the open range doctrine has nothing to do with the legal relationship between livestock owners and motorists “under a theory of negligence.” The fact is that, under our earlier cases on this subject, a negligence theory in such situations was available only under legislative exceptions to the open range doctrine. See, e.g., Bartsch, 149 Mont. at 409, 427 P.2d at 305; Ambrogini, 197 Mont. at 120-21, 642 P.2d at 1019.
¶131 Overall, my position is this: The Court sweeps away decades of precedent by characterizing our statements of law in those cases that an owner of livestock has no duty to prevent the livestock from wan *136 dering on the highways as mere “assumptions.” Such a cavalier approach to the legal determinations of Montana’s highest court is inappropriate and is, in my view, an insufficient starting point to overrule a body of decisions which stated the rule of law on this subject in Montana for decades and provided the stability and predictability in the law which is so necessary in an ordered society.
¶132 Moreover, the Court fails to notice what, to me, is the clear tie between our cases and the Legislature’s reliance on-and response to-those cases; in doing so, the Court undercuts the Legislature’s lawmaking authority on this subject. The fact is that our 1967 Bartsch decision addressed the livestock-motorist dilemma at a time when the only statutory duty imposed on livestock owners with regard to livestock on highways was for willfully or intentionally allowing livestock onto certain highways. There, we stated without equivocation that
in open range country, the owner of livestock... has no duty to prevent the livestock from wandering. Since he has no duty to prevent such wandering, he cannot be said to be negligent if the livestock do wander — even if such wandering takes them onto a highway right of way which runs through the open range.
Bartsch, 149 Mont. at 409, 427 P.2d at 305. Recognizing the propriety of the result, but concerned about increased motor traffic in the last third of the twentieth century, Justice John C. Harrison specially concurred, urging the Legislature to give the subject its “utmost consideration.” Bartsch, 149 Mont. at 410, 427 P.2d at 305 (Harrison, J., concurring).
¶133 The Legislature heeded Justice Harrison’s plea in the very next legislative session by enacting statutes relating to the subject. See 1969 Mont. Laws Ch. 311, Sec. 1. The Legislature acted again in 1974, more vigorously, by enacting what subsequently became § 60-7-101, MCA, the “Purpose” statement that §§ 60-7-101 through 60-7-103, MCA, were expressly intended
to balance the tradition of the open range and the economic and geographic problems of raising livestock with the need for safer highways and the policy of taking all feasible measures to reduce the high incidence of traffic accidents and fatalities on Montana highways.
See 1974 Mont. Laws Ch. 255, Sec. 1. In a separate bill, the Legislature also amended other statutes on the subject. Of special note, it amended the statute referenced in Bartsch — which previously had im *137 posed a duty only for willfully or intentionally allowing livestock on certain highways-to provide that the livestock owner “may not permit” occupation of certain highways by livestock. See 1974 Mont. Laws Ch. 316, Sec. 7. On the basis of this last legislative amendment, we properly decided in Ambrogini that livestock owners in Montana could be found liable for merely negligent-rather than willful-conduct which results in the presence of their cattle on certain highways designated by the Legislature. Ambrogini, 197 Mont. at 120, 642 P.2d at 1018.
¶134 It is my view that Title 60, Chapter 7 clearly expresses the Legislature’s intent in balancing the modern dilemma of livestock in an open range state with the competing concerns for motorist safety. Certain duties have been imposed on the state of Montana and on livestock owners via those statutes and it is my view that the statutes set the only parameters within which a motorist or passenger may sue a livestock owner for negligently allowing livestock on the designated highways. The facts of the present case do not fall within those parameters.
¶135 The Legislature having done the balancing it found necessary and appropriate, and having done so in response to Bartsch, there is simply no basis for the Court to extend and expand that careful legislative balancing — via application of § 27-1-701, MCA-to apply to circumstances the Legislature clearly did not intend to bring within its purview. In short, it is my view that, in enacting Title 60, Chapter 7, the Legislature set forth-as the public policy of this state-the only exceptions to the open range-no duty doctrine available for livestock-vehicle collisions. Our job is not to decide whether we agree with the Legislature’s actions; our job is to “ ‘construe and apply the law as [we] find it and to maintain its integrity as it has been written by a coordinate branch of the state government.’ ” Raffety v. Kanta Products, Inc. (1991), 250 Mont. 268, 272, 819 P.2d 1272, 1275 (citation omitted). It is undisputed in the present case that the collision occurred on a county road not included within the statutory exceptions to the open range doctrine set forth by the Legislature.
¶136 Furthermore, while the Court’s conclusory statement that the herd district statutes authorize certain landowners “to exempt a particular area of land from the open range” is not altogether incorrect, I disagree that the herd district statutes impact on livestock-motor vehicle collisions on county roads. As a result, I also disagree with the *138 Court’s conclusion that, because the accident at issue here occurred within a herd district, it did not occur within the open range.
¶137 The problem with the Court’s reasoning in this regard is that herd districts are created by owners of land and the penalties for permitting animals to run at large or trespass apply only “within a herd district.” See §§ 81-4-301,81-4-306 and 81-4-307, MCA. Herd districts do not include county roads adjacent thereto and, therefore, a livestock-motor vehicle collision on such a county road simply does not occur within the herd district. Consequently, the Court’s early conclusion that open range “includes all highways outside of private enclosures and used by the public” unless modified by the Legislature-a conclusion with which I heartily agree-remains applicable here and no duty arises.
¶138 In summary, I simply cannot agree with the Court’s decision to apply § 27-1-701, MCA, to the circumstances before us here. The open range-no duty rule and the statutory duty of ordinary care have coexisted-but been separately applied-in Montana for 100 years or more. In both cases, the Legislature has enacted exceptions to the general rules and this Court has applied such statutory exceptions to the cases before it (absent constitutional infirmity). Nothing in this case persuades me that a change in course, especially one by this Court that necessitates turning decades of well-settled law and carefully crafted actions by the Legislature on their head, is either appropriate or necessary. I dissent from the Court’s decision to do so.
¶139 As a final matter, I turn to the issues stated in-and discussed at the very end of-the Court’s opinion. I dissent from the Court’s resolution of issue one, which reverses the District Court’s dismissal of Zancanella from the action. I do agree with the Court that Larson-Murphy’s reliance on the fencing statute and Indendi in this regard-which constitutes the bulk of her argument on this issue-is misplaced. The only other authority relied on by Larson-Murphy is Fagan and the Court properly does not rely on that case to reverse the trial court’s dismissal of Zancanella.
¶140 Indeed, the Court’s decision on this issue is based primarily on a discussion of various portions of the Restatement (Second) of Torts, a discussion with which I do not disagree. My problem, however, is that Larson-Murphy’s contentions on this issue are limited to the arguments set forth above. She did not argue Restatement law in support of her position. It is my view that our duty is to decide cases based on the issues and arguments raised by the parties, so each party has *139 the opportunity to brief the matters raised and this Court can make a reasoned decision accordingly.
While the temptation is often great to decide a case on the basis of the argument that “should have been made,” but was not, in blind-siding an issue we run the very real risk of substituting advocacy for neutrality.
State v. Zabawa (1996), 279 Mont. 307, 318, 928 P.2d 151, 158 (Nelson, J., concurring). Moreover, in relying on the Restatement (Second) of Torts, the Court shifts the thrust of Larson-Murphy’s entire argument from the purported deficiency of the fence to the activity of the Steiners-about which Zancanella knew-of maintaining a bull on the property, with its concomitant risks. It is this sort of “slippery slope” along which it is easy to slide when the Court undertakes to resolve an issue based on an unraised argument.
¶141 I also dissent from the Court’s conclusion on the second issue that the District Court properly denied the Steiners’ motion for summary judgment. For the reasons discussed above at some length, it is my view that the Steiners were entitled to summary judgment under the open range-no duty doctrine, in that no legislative exception to that doctrine applies here. Because Larson-Murphy’s case against the Steiners should have ended with the grant of their motion for summary judgment, I would not separately address whether the District Court properly granted the Steiners’ motion for a directed verdict.
¶142 In sum, while I agree with portions of the Court’s discussion, I dissent from its overall approach and resolution of this case via the application of § 27-1-701, MCA. I would affirm the District Court’s dismissal of Zancanella from the action and reverse the denial of the Steiners’ motion for summary judgment.
CHIEF JUSTICE TURNAGE joins in the foregoing dissenting Opinion.